**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SNOWFLAKE ITM, INC., a Washington Corporation, )<br><br>)<br>Plaintiff, )<br><br>)<br>v. )<br><br>)<br>MICROSOFT CORPORATION, a )<br>Washington Corporation, )<br><br>)<br>Defendant. )<br><br>) | C.A. No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Snowflake ITM, Inc. ("Snowflake") files this Complaint for Patent Infringement and Demand for Jury Trial against Microsoft Corporation ("Defendant" or "Microsoft") and alleges as follows:

1.      Snowflake is seeking to protect its valuable intellectual property from Microsoft's ongoing willful infringement.  Snowflake developed and patented novel technology for managing organizational data and tasks.  The United States Patent and Trademark Office ("USPTO") awarded Snowflake U.S. Patent Nos. 8,744,885, 11,250,355, and 11,961,022.  Exs. 1-3 (the "Asserted Patents").  Snowflake met with Microsoft to discuss a potential partnership, explain its inventions and the benefits they would provide to Microsoft's products, and disclose its patent portfolio.  Ultimately, Microsoft chose to willfully infringe Snowflake's patents rather than enter into a partnership with Snowflake or take a license to its patents, necessitating this action.

1

**THE PARTIES**

2.      Snowflake is a corporation organized and existing under the laws of Washington, with its principal place of business at 2728 48th Ave. SW, Seattle, Washington 98116.

3.      Microsoft is a corporation organized and existing under the laws of Washington, with its principal place of business at 1 Microsoft Way, Redmond, Washington 98052-8300. Microsoft may be served through its agent for service of process, CSC Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

4.      Microsoft directly and indirectly designs, manufactures, distributes, markets, sells, offers to sell, and uses infringing products and services throughout the United States, including in this District, and otherwise directs infringing activities to this District in connection with its product and services, set forth as follows.

**JURISDICTION AND VENUE**

5.      This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

6.      This Court has personal jurisdiction over Microsoft because Microsoft, directly and through its subsidiaries or intermediaries including distributors, retailers, and others, has committed acts within this District giving rise to this action and has established minimum contacts with this forum, such that exercise of jurisdiction over Microsoft would not offend traditional notions of fair play and substantial justice.

7.      Microsoft does continuous and systematic business in this District, including by providing infringing products and services to the residents of this District that Microsoft knew would be used within this District, and by soliciting business from the residents of this District.

2

Microsoft has made its products and services available for, at least, downloading and use within this District.

8.      Venue is proper in the Eastern District of Texas under 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b) because Microsoft is subject to personal jurisdiction in this District as it has committed acts of patent infringement in this District and has a regular and established place of business in this District.  Microsoft, through its own acts, makes, uses, sells, and offers to sell infringing products within this District, regularly does and solicits business in this District, and has the requisite minimum contacts with this District, the State of Texas, and elsewhere in the United States, such that this venue is a fair and reasonable one.

9.      Snowflake is informed and believes that Microsoft maintains millions of dollars of business and personal property in Collin County, within this District.  *See* Ex. 4 (https://www.collincad.org/propertysearch), Ex. 5 (https://www.dentoncad.com/property-search).

10.     Microsoft has several corporate offices in the State of Texas, including in this District, employing hundreds of persons.  On information and belief, Microsoft has offices in and customer sites in Plano, Texas.

11.     On information and belief, Microsoft also has offices located in at least the following cities in the State of Texas: Austin, Garland, Houston, Irving, and San Antonio.

12.     Microsoft offers its products and services throughout Texas, including this District, by shipping, distributing, offering for sale, selling, and advertising its products and services through its website that is accessible within this District, allowing its customers within this District to download its products and services to their computers within this District, and through its physical business locations within this District.

13.     For example, Microsoft operates Microsoft Windows Stores within at least ten Best Buy retail locations throughout the State of Texas, including in this District, e.g., 2800 N Central Expressway, Plano, Texas 75074; 3333 Preston Road, Suite 200, Frisco, Texas 75034; and 2601 S Stemmons Freeway, Suite 300, Lewisville, Texas 75067.  *See, e.g.*, Ex. 6 (https://stores.bestbuy.com/tx/plano/2800-n-central-expy-202.html?ref=NS&loc=ns100) (last visited March 27, 2026); Ex. 7 (https://stores.bestbuy.com/tx/frisco/3333-preston-rd-180.html) (last visited March 27, 2026); Ex. 8 (https://stores.bestbuy.com/tx/lewisville/2601-s-stemmons-fwy-258.html) (last visited March 27, 2026).

14.     Microsoft's Microsoft Windows Stores within Best Buy stores are regular and established places of business for Microsoft within this District.  Microsoft distributes, offers for sale, sells, and advertises products through the Microsoft Windows Stores.  According to Microsoft, these Microsoft Windows Stores are a "comprehensive store-within-a-store," with dedicated "Microsoft specialists" serving Best Buy customers within this "unique environment." Ex. 9, *Microsoft and Best Buy Announce the Windows Store Only at Best Buy*, MICROSOFT (June 13, 2013) (https://news.microsoft.com/source/2013/06/13/microsoft-and-best-buy-announce-the-windows-store-only-at-best-buy-2/) (Microsoft's vice president of computing for Best Buy: "[t]he Windows Store creates the kind of retail destination we all want to shop in, combining great selection, the latest technology, the best service and the lowest prices.").

15.     Microsoft maintains its distinct business identity at these Microsoft Windows Stores, renting the space from Best Buy and holding out its Microsoft Windows Stores as discrete retail locations.  Ex. 10, Brandon LeBlanc, *Talking Retail: The New Windows Store Only at Best Buy*, MICROSOFT WINDOWS BLOGS (June 13, 2013)

(https://blogs.windows.com/windowsexperience/2013/06/13/talking-retail-the-new-windows-store-only-at-best-buy/).

16.     Microsoft is responsible for and controls the day-to-day operations of its Microsoft Windows Stores.  Microsoft is responsible for its "own pricing and merchandise."  Ex. 11, Thomas Lee, *Best Buy Bets Bing on Store-Within-Store Concepts*, MINN. STAR TRIBUNE (July 14, 2013) (https://www.startribune.com/best-buy-bets-big-on-store-within-store-concepts/215301161).

17.     Among the products that Microsoft sells in this District through its Microsoft Windows Store is its Microsoft 365 product, which includes Microsoft Entra, discussed below as an exemplary infringing product.

18.     Additionally, Microsoft has approximately $2 million of property at Aligned Data Center, at 2800 Summit Ave, Plano, Texas 75074, within this District.  Microsoft maintains data servers at this Plano location.  Ex. 12, Dave Montgomery, *Texas Lures Data Centers, Not for Jobs but for Revenue*, N.Y. TIMES (Apr. 26, 2016) (https://www.nytimes.com/2016/04/27/realestate/commercial/texas-lures-data-centers-not-for-jobs-but-for-revenue.html) ("a customizable customer pod containing servers at Aligned Data Centers in Plano, Tex.").

19.     Microsoft Entra ID's authentication service generates log data in Azure storage, and in the datacenter where the service instance runs.  When users attempt to authenticate using Microsoft Entra ID, they are routed to an instance in the geographically nearest datacenter that is part of its Microsoft Entra logical region.  Ex. 13 at 4 (https://learn.microsoft.com/en-us/entra/fundamentals/data-residency).

20.     On information and belief, Microsoft uses its Plano, Texas datacenter to host Microsoft Entra ID log data and operate Microsoft Entra.  There is a point of presence ("POP") location for the Azure network in Plano, Texas, within this District (on information and belief, at the data center discussed in the preceding paragraphs).[1]  Thus, there is a POP location for the Entra network as well.

| Region | Cities |
|---|---|
| North America | Etobicoke, Canada (2) |
| | Montreal, Canada |
| | Vancouver, Canada (2) |
| | Querétaro, Mexico (2) |
| | Atlanta, GA, USA (3) |
| | Boydton, VA, USA (2) |
| | Chaska, MN, USA (2) |
| | Cheyenne, WY, USA (2) |
| | Chicago, IL, USA (4) |
| | Dallas, TX, USA (4) |
| | Des Moines, IA, USA (3) |
| | Detroit, MI, USA |
| | Englewood, CO, USA (2) |
| | Honolulu, HI, USA |
| | Houston, TX, USA (3) |
| | Jacksonville, FL, USA (2) |
| | Las Vegas, NV, USA (3) |
| | Los Angeles, CA, USA (2) |
| | Manassas, VA, USA (3) |
| | Memphis, TN, USA |
| | Miami, FL, USA (4) |
| | Minneapolis, MN, USA (2) |
| | Needham Heights, MA, USA (2) |
| | Nashville, TN, USA |
| | Newark, NJ, USA |
| | New York, NY, USA (2) |
| | Philadelphia, PA, USA |
| | Phoenix, AZ, USA |
| | Plano, TX, USA |
| | Portland, OR, USA |
| | Quincy, WA, USA (3) |
| | San Antonio, TX, USA (4) |
| | San Jose, CA, USA (4) |
| | Salt Lake City, UT, USA (3) |
| | Seattle, WA, USA (2) |
| | Secaucus, NJ, USA (2) |
| | Southfield, MI, USA |
| | Tempe, AZ, USA |

[1] POPs are part of content delivery networks: "a distributed network of servers that can efficiently deliver web content to users.  A content delivery network store[s] cached content on edge servers in point of presence (POP) locations that are close to end users, to minimize latency."  Ex. 14, *What is a Content Delivery Network on Azure?*, MICROSOFT LEARN (https://learn.microsoft.com/en-us/azure/cdn/cdn-overview) (last updated February 28, 2026).

Ex. 15 at 2, *Azure Content Delivery Network Coverage by Metro*, MICROSOFT LEARN

(https://learn.microsoft.com/en-us/azure/cdn/cdn-pop-locations) (last updated February 28, 2026)

(highlighting added to show Plano, Texas location).

21.     As discussed above, Microsoft regularly conducts and solicits business within this

District and Microsoft has engaged in persistent conduct and has derived substantial revenues

from goods and services provided in the State of Texas and this District.  Thus, Microsoft is

subject to this Court's general and specific jurisdiction pursuant to due process and the Texas

Long Arm Statute due, at least, to Microsoft's substantial business in the State of Texas and this

District, including through its past and ongoing infringing activities.

### SNOWFLAKE'S ASSERTED PATENTS

22.     Steven Johnson formed Snowflake in 2006 as technology company to develop

software and inventions for asset and task management solutions.

23.     Mr. Johnson invented a major breakthrough in digital asset and task management,

developing a new access-control paradigm that was based on target attributes, context, and

relationships, and that provided important benefits over then-conventional technology.  Mr.

Johnson's inventions are now widely used to manage the ever-expanding volume of data and

digital assets and resources.  The USPTO awarded Snowflake a series of patents covering his

inventions.

24.     On June 3, 2014, the USPTO duly and legally issued to Snowflake U.S. Patent

No. 8,744,885 (the "'885 Patent"), titled "Task Based Organizational Management System and

Method."  Snowflake is the owner by assignment of the '885 Patent.  Snowflake filed the

application for the '885 Patent with the USPTO on March 28, 2007.  A true and accurate copy of

the '885 Patent is attached as Exhibit 1.

25.     On February 15, 2022, the USPTO duly and legally issued to Snowflake U.S. Patent No. 11,250,355 (the "'355 Patent"), titled "Task Based Organizational Management System and Method."  Snowflake is the owner by assignment of the '355 Patent.  Snowflake filed the application for the '355 Patent with the USPTO on October 5, 2017.  A true and accurate copy of the '355 Patent is attached as Exhibit 2.

26.     On April 16, 2024, the USPTO duly and legally issued to Snowflake U.S. Patent No. 11,961,022 (the "'022 Patent"), titled "Task Based Organizational Management System and Control Method."  Snowflake is the owner by assignment of the '022 Patent.  Snowflake filed the application for the '022 Patent with the USPTO on February 11, 2022.  A true and accurate copy of the '022 Patent is attached as Exhibit 3.

27.     The Asserted Patents are directed to patent-eligible subject matter because their claims recite specific, technical solutions to concrete problems in cloud data storage and distributed computing rather than claiming an abstract idea standing alone.

28.     At the time of Snowflake's pioneering efforts that led to the inventions of the Asserted Patents, traditional digital asset management was based on a manual network operator that granted access based on identity or role.

29.     Enterprises originally used Identity-Based Access Control (IBAC) to secure access to networked assets, such as documents, programs, processor cycles, and data.  Under the IBAC paradigm, a network operator manually assigned permissions to specific users to be able to access particular assets.  For example, a network operator could manually assign permission to access a certain file to five specific users.  IBAC systems were simple to implement and understand but did not scale for larger organizations because the number of user/asset pairs that needed to be defined and updated grew exponentially as the size of the organization grew.

8

30.     Due to the shortcomings in IBAC, the industry began to use Role-Based Access Control (RBAC), where each user is assigned a role within an organization, such as manager, technician, or engineer, and each role is categorically authorized to access certain assets.  For example, anyone assigned the role of manager might be authorized to open any document.  While better than IBAC, RBAC was overly rigid and continued to have scale problems.  For example, in a large organization, the supervisor of one team might need access to documents created by that team but should not have access to documents created by other teams.  The inability to control access dynamically and with granularity led to many security failures and a "role explosion," where an organization would create more and more role identities to try to enforce security with some granularity by creating differentiated roles.

31.     Mr. Johnson solved these long-standing problems by conceiving of his new paradigm for access control.  Under the inventions of the Asserted Patents, users and resources are assigned attributes.  The attributes can include relationships between other users, machines, processes, and resources that create hierarchical relationships and organizational maps.

32.     Organizations set policies, which are used to dynamically and automatically determine if an action or request for access is authorized based on applying to rules at least attributes of the object of the request or action.  For example, an organization's policy might authorize a user's request to edit a document if the document has been assigned certain attributes, is controlled by a certain group within the organization, and does not include personal data.  These policies are dynamic because they take into account when the attributes change and reflect the dynamic condition and attributes of the target of the request.  For example, if the document's attributes are changed, then the user's request to edit the document, which previously would have

been granted, might now be denied.  This happens without needing to define or adjust the specific user's permission to edit the particular document.

33.    Thus, Snowflake's inventions provide specific technological solutions to the scalability problems of conventional IBAC and RBAC systems, providing for new techniques for evaluating access requests that are able to dynamically and automatically determine if access requests should be granted, while minimizing the amount of manual permission relationships that need to be defined.  The claims of the Asserted Patents, therefore, do not merely recite high-level business or organizational practices but instead describe concrete improvements in computer-related functionality—including particular data structures, specialized control of resources, and novel arrangements of computing elements that optimize data access efficiency and resource utilization.  The specifications of the Asserted Patents support these conclusions by disclosing concrete implementation details and distinguishing then-conventional systems.

34.    In a 2021 blog post introducing attribute-based access control in its products, years after Snowflake filed the applications for the Asserted Patents, Microsoft explained that basing access control on attributes provides improvements over then-conventional RBAC technology.  Ex. 16 (https://techcommunity.microsoft.com/blog/microsoft-entra-blog/introducing-attribute-based-access-control-abac-in-azure/2147069).

35.    For example, Microsoft stated that, "In some scenarios, you need **more fine-grained access control** than what RBAC offers.  For example, you need to grant access to some, not all, resources in a hierarchy.  You need to make access control decisions based on **business information**, such as a resource's deployment stage or a user's project.  Such information is commonly referred to as attributes or tags and using attributes in access control decisions is commonly referred to as ABAC.  As your Azure usage grows, you need to manage access with

10

relatively **fewer role assignments**. . . .  By using attributes as additional inputs into access control decisions, you can achieve even more fine-grained access control than what RBAC offers with relatively fewer role assignments." *Id.* at 1.

36.    Snowflake's Asserted Patents are further patent eligible because they are directed to improvements in how computers operate.  Specifically, the claimed inventions of the Asserted Patents dramatically improve how organizations can control access to assets over computer networks and use attributes, organizational structures, and policies to dynamically and automatically make authorization determinations that could not previously be done using the tools available at the time.

37.    Snowflake's Asserted Patents contain specific inventive concepts that are not merely the routine or conventional use of the Internet or computer systems and, instead, are based on a new and improved control paradigm.  For example, the claims of the Asserted Patents variously recite inventive limitations such as "storing a representation of at least one organization's structure in memory, the representation including layers of separate but integrated authority structures;" "organizational authority hierarchy layer mapping an organizational chart of the organization within which authority is granted to the user to perform certain . . . based on the relative position of the user to the other user in the organizational authority hierarchy layer as determined by a dynamic real time evaluation of attributes of the other user;" "when the user and the other user are not directly connected in the organizational chart, the dynamic real time evaluation also including attributes of intervening members in the organizational authority hierarchy layer;" "a team authority hierarchy layer;" "a task authority structure layer;" and a structure where "layers overlap and create the integrated authority structure by which the at least one rule of each activity dynamically evaluates attributes from any combination of layers at real

11

time to determine if an activity is allowed by the user." These inventive conceptions were not conventional, routine, or well-known at the time of the inventions of the Asserted Patents. Other claims of the Asserted Patents describe further specific and non-conventional functions and accessing requirements of access control systems.

38.    Finally, the claims of the Asserted Patents are directed to specific techniques and, therefore, do not give rise to concerns about preemption and leave available unclaimed alternatives for access control, such as the conventional but inferior IBAC and RBAC systems.

39.    Thus, the Asserted Patents disclose so much more than just a simple combination of generic components to perform conventional activities, such that they claim patent eligible inventions.

## COMPLIANCE WITH MARKING STATUTE – 35 U.S.C. § 287

40.    Snowflake has at all times complied with the marking statute (35 U.S.C. § 287).

41.    Snowflake has not licensed any of the Asserted Patents.

42.    All claims in the '355 and '022 Patents are limited to method claims and, therefore, are not subject to 35 U.S.C. § 287.

43.    With respect to the '885 Patent, since the June 3, 2014 date that patent issued, Snowflake has not offered for sale, sold, or licensed any products that embody any claim of that patent.

44.    Thus, Snowflake's recovery of pre-suit damages for Microsoft's infringement of the Asserted Patents is not limited by 35 U.S.C. § 287(a) as to any Asserted Patent.

## MICROSOFT'S ACCUSED PRODUCTS

45.    Microsoft makes, uses, sells, offers for sale, and imports into the United States, the State of Texas, and this District a variety of products and services that infringe the Asserted

12

Patents (the "Accused Products"), including the Microsoft Entra Suite ("Microsoft Entra"), which includes Microsoft Entra ID (formerly Azure AD), Microsoft Entra Workload ID, Microsoft Entra Permissions Management, and other functionalities.  Microsoft also provides Microsoft 365, which incorporates Microsoft Entra.

46.     Microsoft Entra is software offering identity verification, authentication, and authorization functionality.  Microsoft Entra is used to control access to networked objects and resources.  Microsoft Entra determines the resources a user is allowed to access, the actions the user is allowed to perform, and the level of trust the user is to be granted.  Microsoft Entra combines network access, identity protection, governance, and identity verification solutions.  Ex. 18 (https://www.microsoft.com/en-us/security/business/identity-access/microsoft-entra-id).



Ex. 19 at 1 (overview of Microsoft Entra functionality) (https://learn.microsoft.com/en-us/entra/identity/conditional-access/plan-conditional-access).

47.     Microsoft Entra provides four stages of secure end-to-end access control, including establishing "zero trust" access controls, securing access for employees, securing access for external users such as customers and partners, and securing cloud access.



Ex. 17 at 1, What is Microsoft Entra? (https://learn.microsoft.com/en-us/entra/fundamentals/what-is-entra).

48.    Microsoft Entra ID, part of Microsoft Entra, is a cloud-based identity and access management solution.  Microsoft Entra ID enables employees and guest users to sign in securely and access resources such as Microsoft apps (for example, Microsoft 365 and Azure), pre-integrated SaaS apps (for example, ServiceNow, Google apps), and custom-build cloud or on-premises web apps.  Microsoft Entra ID offers security capabilities including single sign-on, multifactor authentication, conditional access, and lifecycle management to protect organizations against identity compromise.

49.    Microsoft Entra ID includes capabilities for Conditional Access policies that evaluate user, device, location, risk, and application attributes, dynamic group membership based on user or device attributes, attribute-based role assignment, and authentication and authorization decisions based on attributes and dynamic context.  Microsoft Conditional Access evaluates multiple attributes at sign-in time or upon a request, and then dynamically and automatically grants, blocks, or restricts access or action requests.  For example, Conditional Access might allow access to certain resources with specific attributes if the user is a manager, assigned to a

management group, presently in a location that is trusted, and making the request from a complaint device.

50. Microsoft sells Microsoft Entra ID as a standalone product for $6.00 to $9.00 per user per month, paid yearly. Microsoft sells Microsoft Entra for $12.00 per user per month, paid yearly. A subscription to Microsoft Entra Suite includes access to Microsoft Entra ID, Microsoft Entra ID Protection, Microsoft Entra ID Governance, Microsoft Entra Verified ID, Microsoft Entra Internet Access, and Microsoft Entra Private Access.



Ex. 20 at 1 (https://www.microsoft.com/en-us/security/business/microsoft-entra-pricing).

15

51.    Microsoft Entra Permissions Management provides cloud infrastructure entitlement management across Azure, AWS, and Google Cloud.  It is Microsoft's cloud infrastructure entitlement management (CIEM) solution and provides visibility into permissions across major cloud platforms and identifies excessive, unused, or risky privileges.  Ex. 21 (https://www.microsoft.com/en-us/security/business/identity-access/microsoft-entra-permissions-management).  Microsoft Entra Permissions Management discover excessive permissions, identifies risky attribute combinations, and informs policy remediation.

52.    Microsoft Workload ID manages access to and access requests from applications, services, APIs, containers, and cloud workloads.  Workload identities are identities granted to apps or services that need to access and communicate with other services.  Instead of relying on secrets or hard-coded credentials, Workload IDs enable these workloads authenticate to Azure and other resources using strong, centrally governed identity controls.  Workload ID replaces hard-coded credentials with managed identities and enforces conditional access for non-human actors.  Thus, Microsoft Entra Workload ID provides access control functionality for computer processes and services to access other online resources.  Ex. 17 (https://learn.microsoft.com/en-us/entra/fundamentals/what-is-entra).

16



Ex. 22 (https://www.microsoft.com/en-us/security/business/identity-access/microsoft-entra-workload-id).

53.     Microsoft Entra External ID (Customer) expands the functionality of Microsoft Entra in order to allow organizations to authenticate and manage users who are not employees, such as customers.

54.     Microsoft Entra Verified ID is a decentralized identity solution that provides functionality for organizations to issue, verify, and manage digital credentials that individuals can securely store and share.  Ex. 17 (https://learn.microsoft.com/en-us/entra/fundamentals/what-is-entra).

55.     Microsoft 365 is a cloud-based productivity suite that combines Microsoft Office applications with collaboration tools, security services, and device management capabilities.  It provides organizations with an integrated platform for communication, document creation, teamwork, and enterprise-grade security across desktops, mobile devices, and the cloud.

17

Microsoft Entra provides security and access control for all Microsoft 365 services, ensuring that only authorized users are permitted to access or modify documents and data.  Ex. 17 (https://learn.microsoft.com/en-us/entra/fundamentals/what-is-entra).

**MICROSOFT KNEW OF SNOWFLAKE'S PATENTS**

56.     Microsoft knew of Snowflake's patented technology and that its Accused Products infringe Snowflake's patents, and Microsoft has used Snowflake's intellectual property without Snowflake's permission.  As a result, Microsoft's infringement of Snowflake's Asserted Patents, both before and after the filing of this suit, is willful.

57.     Snowflake's principal and named inventor, Mr. Johnson, began discussing the possibility of a partnership with Microsoft in 2019.  At that time, Microsoft did not have any access-control products that were based on attributes of the target of the access or action request.

58.     Mr. Johnson met with Ms. Sofia-Cristina Visan, Microsoft's Senior Program Manager for Azure AD B2C Partner Programs on or about March 28, 2019.  Azure AD B2C later evolved into part of the Microsoft Entra product.  Their meeting took place in person at Microsoft's main campus in Redmond, Washington.

59.     The meeting between Mr. Johnson and Ms. Visan lasted for about an hour and a half.  During this meeting, Mr. Johnson described in detail to Microsoft his access-control inventions.  Mr. Johnson showed Ms. Vison a detailed presentation with architectural diagrams and other technical disclosures.

60.     Mr. Johnson disclosed Snowflake's '885 Patent to Microsoft through this meeting, including by explaining to Ms. Visan that he had a patent portfolio including additional pending applications covering the technology that he was disclosing to Microsoft, and by listing the '885 Patent in his presentation, specifically connecting the patent to the technical disclosures.

61.     Mr. Johnson proposed to Microsoft through this meeting that it partner with Snowflake to develop products incorporating his patented inventions and obtain a license to Snowflake's patents.  Ms. Visan indicated to Mr. Johnson that Microsoft typically only partners with companies that have a completed product because Microsoft would otherwise have to allocated internal resources to develop it.

62.     After the meeting, Ms. Visan thanked Mr. Johnson for sharing his information with Microsoft and sent Mr. Johnson some information about Microsoft's Azure AD (an earlier version of what is today Microsoft's Entra ID product) and Azure B2C (an earlier version of what is today Microsoft's Entra External ID product).  Ms. Visan identified these products as resources that could be leveraged by Snowflake's technology moving forward.  After review, Mr. Johnson responded that his inventions would work very well with Azure B2C.

63.     Since Snowflake was only presenting ideas and intellectual property and did not have the resources at that time to build the product by itself, Microsoft did not proceed in a partnership with Snowflake.

64.     On information and belief, Ms. Visan continued to work with Azure AD and then Microsoft Entra products, and she carried her knowledge of Snowflake's patented inventions into the development of those products.

65.     In 2021, two years after Snowflake's disclosures to Microsoft of its patented technology, Microsoft first introduced infringing attribute-based access control technology into Azure and Microsoft Entra.  Ex. 16 (https://techcommunity.microsoft.com/blog/microsoft-entra-blog/introducing-attribute-based-access-control-abac-in-azure/2147069).  In view of Snowflakes disclosures, Microsoft introduced this technology into its products knowing that it was infringing Snowflake's Asserted Patents.

**COUNT I – DIRECT INFRINGEMENT OF THE '885 PATENT**

66.    Snowflake repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

67.    Microsoft has infringed and continues to directly infringe at least exemplary Claim 1 of the '885 Patent in violation of 35 U.S.C. § 271(a) by making, using, importing, selling, and offering for sale in the United States at least Microsoft Entra without the permission, consent, authorization, or license of Snowflake.

68.    Microsoft's infringement is based upon literal infringement, infringement under the doctrine of equivalents, or both.

69.    Microsoft directly infringes the claimed methods because it hosts and operates Microsoft Entra, thereby performing the steps of the claimed methods.  Microsoft directly infringes the claimed systems because it owns, assembles, operates, and controls the systems that provide Microsoft Entra to its customers.  Customers do not deploy, install, or run Microsoft Entra on their own servers.  Instead, customers are provided with "tenants," which are identity directories inside Microsoft's cloud.

70.    To the extent any components of the claimed systems are provided by Microsoft's customers, Microsoft directly infringes by acting as the final assembler and administrator of the infringing system described below, which is owned and operated by Microsoft.  *See* Ex. 23 (https://learn.microsoft.com/en-us/previous-versions/entra/permissions-management/).

70.    By way of example of Microsoft's infringement of the '885 Patent, Microsoft Entra meets all the limitations of exemplary Claim 1 of the '885 Patent.

71.    Microsoft Entra provides a "A computer-implemented method to manage activities and resources of an organization on a rule-based platform, including allowing a user to

20

access, view, and modify organizational resources, the organizational resources including an

organizational task, a team, individual users, and/or a direct report, the method of managing

based on an evaluation of attributes of at least the organizational resource by at least one rule

controlling the activity to determine if the user is allowed to perform the activity."  Microsoft

Entra is software that operates on computers and manages when users and processes are allowed

to access, view, and modify organizational resources, such as documents, files, and other

processes.

71.    Microsoft's servers running Microsoft Entra Conditional Access software use a

variety of data (referred to as "signal"), including attributes, applied to organizational policies

and rules to determine if access requests should be granted.  As discussed below, the resources

that are managed by Microsoft Entra include tasks, teams, and users.



Ex. 24 at 1-2, What is Conditional Access? (https://learn.microsoft.com/en-

us/entra/identity/conditional-access/overview).

72.    Microsoft Entra stores a representation of organizations' structures in memory, the representation including layers of separate but integrated authority structures.  Microsoft Entra has protected containers with policies and permissions where organizations' structures are hosted and stored.  Microsoft Entra describes the concept of the containers for an organizations' structures as "deeply ingrained in the directory service at all layers, from portals all the way to persistent storage."  Ex. 25 at 1 (https://learn.microsoft.com/en-us/microsoft-365/enterprise/microsoft-365-isolation-in-azure-active-directory).  Exemplary integrated authority structures are discussed below.



*Id.*

73.    Microsoft Entra provides multiple layers of integrated but separate authority structures.  Microsoft Entra includes security groups, which are "used to manage access to shared resources."  "Members of a security group can include users, devices, [and] service principals. Groups can be members of other groups, sometimes known as nested groups. . . . Users and service principals can be the owner of a security group."  Ex. 26 at 1 (https://learn.microsoft.com/en-us/entra/fundamentals/concept-learn-about-groups).  These

security groups are authority structures with multiple layers and can be separate but integrated through nested groups and overlapping members, authorizations, and access to resources.

74.     Microsoft Entra also provides for Microsoft 365 groups, which "provide collaboration opportunities" for groups of users to share resources.  Ex. 26 at 2 (https://learn.microsoft.com/en-us/entra/fundamentals/concept-learn-about-groups).  The groups are additional authority structures.

75.     Individual users within an organization are assigned a variety of attributes, including attributes that create authority hierarchy maps, such as the user's job title, department, or manager.  Ex. 27 (https://learn.microsoft.com/en-us/entra/fundamentals/how-to-create-delete-users).  Users are also assigned to groups, administrative units, and roles.  *Id.*  These attributes define the hierarchical relationship between users, groups, and resources.  For example, a user may be categorized as the manager of a second user, and a third user may be categorized as the manager of the first user.

76.     As seen in the diagram below, when an object such as a user is provisioned to Microsoft Entra, a new instance of the object is created.  As part of this process, the object is assigned attributes.  Initially, the newly created object has its attributes set to values that are determined by the synchronization rules.  These attributes are then kept up to date via the cloud provisioning agent and can also be modified by users with authorization to do so.



Ex. 28 (https://learn.microsoft.com/en-us/entra/identity/hybrid/cloud-sync/concept-attributes).

77.    For example, a user may be part of an organization's Marketing department. When the user is provisioned, the corresponding user object's on-premises Active Directory department would be assigned the attribute of membership in the Marketing department.  If the user were to be reassigned to the Sales department, then the Active Directory department attribute would be changed to Sales.  This change synchronizes to Microsoft Entra ID and is reflected in the user's Microsoft Entra user object.  Ex. 28 (https://learn.microsoft.com/en-us/entra/identity/hybrid/cloud-sync/concept-attributes).

78.    Microsoft Entra provides "an organizational authority hierarchy layer mapping an organizational chart of the organization within which authority is granted to the user to perform certain activities including accessing, viewing, and modifying another user based on the relative position of the user to the other user in the organizational authority hierarchy layer."  The groups, attributes, and relationships assigned to users create a logical organizational chart of the organization.  As discussed above, users may be identified as reporting to or reports of other users and placed within different groups and sub-organizations within an organization.  These relationships can determine which actions a user is authorized to perform on other users based on their relative position within the organization authority hierarchy.  Users can build an

24

organizational authority hierarchy based on the nested groups functionality.  The nested groups can also contain direct reports of a manager.  This creates a hierarchy layer of the organizational chart.  Ex. 29 (https://learn.microsoft.com/en-us/entra/identity/users/groups-dynamic-membership).

79.     For example, a resource owner or Microsoft Entra directory owner can assign a set of permissions to members of the group or grant group management rights to a department manager or help desk administrator, while other members of the group or users who are not members of the group are not authorized to perform those actions.  Ex. 27 (https://learn.microsoft.com/en-us/entra/fundamentals/how-to-create-delete-users).  Only users with certain assigned placements within the organizational hierarchy are permitted to perform certain administrative tasks on the accounts of other users within the organization.  *Id.*

80.     Microsoft explains that it is important for "each application, resource, and service that requires access permissions to be managed separately because the permissions for one might not be the same as another."  Ex. 26 at 3 (https://learn.microsoft.com/en-us/entra/fundamentals/concept-learn-about-groups).  According to Microsoft, "[t]he information security principle of least privilege asserts that users and applications should be granted access only to the data and operations they require to perform their jobs."  Ex. 35 (https://learn.microsoft.com/en-us/entra/identity-platform/secure-least-privileged-access).

81.     Microsoft Entra can determine user authorization to perform these operations by a dynamic real time evaluation of attributes of the other user.  Ex. 26 (https://learn.microsoft.com/en-us/entra/fundamentals/concept-learn-about-groups).  As noted above, authorization to perform an operation may depend on the attributes of the two users, such as the organizational relationship between the two users.  Microsoft Entra provides continuous

access evaluation, meaning that authorization determinations are based on application of continuously updated attribute and relationship data to authorization policies.  Ex. 36 (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-continuous-access-evaluation).  For example, if a user is terminated from an organization or assigned new attributes, that updated user attribute data will be subjected to real time application to the authorization policy.  *Id.*

82.     Microsoft Entra has real-time and calculated risk detection which lends to dynamic enforcement of the attributes.  The signal integration with Microsoft Entra software lets Conditional Access policies, for example, identify and remediate risky users and sign-in behavior.  To enforce conditional access, Microsoft Entra software uses the session details gathered to identify any requirements that the user does not meet.  Microsoft Entra confirms whether there is a policy that blocks the user from the action and then enforces the policy.  In this manner, the attributes of users and intervening members are evaluated in real-time to determine specifically whether the request should be granted.  Ex. 32, Building a Conditional Access Policy (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-policies).

83.     With Microsoft Entra, when the user and the other user are not directly connected in the organizational chart, the dynamic real time evaluation also includes attributes of intervening members in the organizational authority hierarchy layer.  Microsoft Entra allows a user to grant access and permissions to a group of users instead of to each individual user.  The user can manage the groups in Microsoft Entra and members of the groups can include user devices and service principals.  Ex. 26 at 1 (https://learn.microsoft.com/en-us/entra/fundamentals/concept-learn-about-groups).  Additionally, groups can be members of

other groups as well, creating hierarchical relationships between groups, where members have access to resources and authorizations based on their membership in these intervening groups in the organizational authority hierarchy.  *Id.*

84.    A user can deem specific users to be members of a group and grant unique permissions to the members of the group.  In order to grant the unique permissions, the user can implement rules that automatically add and remove users as members.  For example, if the member's attributes change, the system can review the customer's rules for dynamic membership groups for the customer's directory.  The system checks whether the member's attributes satisfy the rule requirements.  Ex. 26 (https://learn.microsoft.com/en-us/entra/fundamentals/concept-learn-about-groups).

85.    The integrated authority structures of Microsoft Entra software include "a team authority hierarchy layer within which authority to perform certain activities including accessing, viewing, and modifying a team is granted to the user based on a real time evaluation of the attributes of the team that may include a team manager and/or team member attributes of the team."  Microsoft Entra's team authority hierarchy layer maps relationships between users based on team-related attributes, such as membership in a specific team.  At the team authority hierarchy layer level, the user can create a group that contains all direct reports of a manager. When the manager's direct reports change in the future, the group's membership is adjusted automatically.  Similarly, when the manager's direct reports change in the future, the group's membership is adjusted automatically.  Ex. 29 (https://learn.microsoft.com/en-us/entra/identity/users/groups-dynamic-membership).  These team-membership attributes can be assessed in real time to evaluate access requests.

27

86.    The integrated authority structures of Microsoft Entra software also include "a task authority structure layer within which authority to perform certain activities including accessing, viewing, and modifying a task is granted to the user based on a real time evaluation of the attributes of the task that may include a task manager and/or task performer attributes of the task." Ex. 30 (https://learn.microsoft.com/en-us/entra/identity/role-based-access-control/custom-overview).  The task authority hierarchy layer involves creating custom role and task related attributes that Microsoft Entra uses to determine if a user is authorized to perform a requested activity. *Id.*

87.    In Microsoft Entra, "the layers overlap and create the integrated authority structure by which the at least one rule of each activity dynamically evaluates attributes from any combination of layers at real time to determine if an activity is allowed by the user."  The overlap provides relationships between the different layers, such as a relationship between the team authority structure and the task authority structure.  For example, a user that supervises another user is provided with certain permissions related to its team authority.  In their supervisory position, the supervising user can also have the task authority permission that the supervised user has, for example, access to a confidential document created by the supervised user.  Ex. 31 (https://learn.microsoft.com/en-us/entra/fundamentals/how-to-manage-groups).

88.    In addition, Microsoft Entra can apply multiple conditional policies to users at the same time, reflecting overlap in the policies associated with the different layers at the same time. Ex. 32, Building a Conditional Access Policy (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-policies).

89.    When Microsoft Entra is operated on a processor, the software identifies "at least the attributes evaluated by the at least one rule of the activity" and then "evaluat[es] the

identified attributes, according to the at least one rule of the activity, to determine if the activity is allowed by the user." As noted above, Microsoft operates the servers the run Microsoft Entra to make authorization determinations. At the start of a session, Microsoft Entra collects session details, such as network location and device identity necessary for policy evaluation. Ex. 32, Building a Conditional Access Policy (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-policies).

90.    Microsoft Entra then applies the relevant attributes, both for the user or process that is making the activity request and for the target of the request, to the applicable policies in order to determine if the activity is allowed or if it should be blocked. Ex. 32, Building a Conditional Access Policy (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-policies).

91.    After completing the evaluation, Microsoft Entra grants the requesting user or process "the authority to perform the activity to the user according to the at least one rule evaluating the attributes of at least the resource the user is attempting to interact with to determine if the requested activity is allowed by the user based at least on a relationship of the user to the respective task, the team, individual user and/or direct report in the integrated authority structure of the rule based platform as defined by the attributes of the respective task, team, individual user and/or direct report." Microsoft Entra, based on the role assignment, and organizational and team authority hierarchy, can allow the activity based at least on a relationship of the user to the task, team, or direct report. Once all grant controls are satisfied, session controls can be applied, for example, Microsoft Defender for Cloud Applications. As discussed above for example, more than one policy may have to be met in order for access to be granted, which too can be based on the relationship of the user to the task. Ex. 32, Building a

29

Conditional Access Policy (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-policies).

92.    Finally, if allowed, the processor running Microsoft Entra directs that the authorized requested activity be executed.



Ex. 24 at 1, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).

93.    Microsoft's direct infringement of the '885 Patent has injured and continues to injure Snowflake in an amount to be proven at trial, but not less than a reasonable royalty.

94.    Microsoft has had knowledge of Snowflake's patents, including the '885 Patent, since at least as early as 2019 and has had specific knowledge of its infringement of the '885 Patent since 2021 or, at the latest, the filing of this Complaint.  Microsoft's actions are willful, blatant, and in egregious disregard for Snowflake's patent rights.

95.    Microsoft's willful infringement has caused and is continuing to cause damage and irreparable injury to Snowflake, and Snowflake will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

96.    Microsoft acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '885 Patent, justifying an award to Microsoft of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

97.     Snowflake is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Microsoft's direct infringement of the '885 Patent.

## COUNT II - INDIRECT INFRINGEMENT OF THE '885 PATENT

98.     Snowflake repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

99.     As set forth above, Microsoft has had knowledge of Snowflake's patents since at least as early as 2019 and has had specific knowledge of its infringement of the '885 Patent since 2021 or, at the latest, the date of this Complaint.

100.    As set forth with respect to Count I, at least Microsoft Entra software directly infringes the '885 Patent.  In addition to directly infringing the '885 Patent, Microsoft has actively, knowingly, and intentionally induced and continues to induce direct infringement of the '885 Patent under 35 U.S.C. § 271(b) by instructing and encouraging its customers to use or install Microsoft Entra software in an infringing manner.  For example, all of the infringing functionalities discussed above are supported and encouraged by Microsoft through the resources on its learn.microsoft.com portal cited above.

101.    Microsoft instructs and encourages its customers on how to use each of these core features of Microsoft Entra software, including through direct communication, trainings, reference materials, user guides, promotional materials, support contracts, sales calls, release notes, webinars, guidelines, videos, manuals, and white papers, all of which are intended to enable and encourage the infringing use of Microsoft Entra software.

102.    Microsoft's websites promote Microsoft Entra software and describe the benefits of these products, and detail various packages available to customers.  *See, e.g.,* Exs. 18, 20-21.

31

103.    Microsoft is also liable for contributory infringement of the '885 Patent pursuant to 35 U.S.C. § 271(c) by knowing or being willfully blind to the fact that it is contributing to infringement of the '885 Patent by offering to sell and selling in the United States Microsoft Entra software.  Microsoft Entra software is not a staple article or commodity of commerce suitable for substantial non-infringing use.  This is because the core functionality of Microsoft Entra described above infringes the '885 Patent.  Thus, there is no substantial non-infringing use for Microsoft Entra.

104.    Microsoft's indirect infringement of the '885 Patent has injured and continues to injure Snowflake in an amount to be proven at trial, but not less than a reasonable royalty. Snowflake will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by the Court.

105.    Pursuant to 35 U.S.C. §§ 283, 284, and 285, Snowflake is entitled to injunctive relief, damages, and attorney's fees and costs.

**COUNT III  DIRECT INFRINGEMENT OF THE '022 PATENT**

106.    Snowflake repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

107.    Microsoft has infringed and continues to directly infringe at least exemplary Claim 1 of the '022 Patent in violation of 35 U.S.C. § 271(a) by making, using, importing, selling, and offering for sale in the United States at least Microsoft Entra without the permission, consent, authorization, or license of Snowflake.

108.    Microsoft's infringement is based upon literal infringement, infringement under the doctrine of equivalents, or both.

32

109. Microsoft directly infringes the claimed methods because it hosts and operates Microsoft Entra.  Customers do not deploy, install, or run Microsoft Entra on their own servers. Instead, customers are provided with "tenants," which are identity directories inside Microsoft's cloud.

110. By way of example of Microsoft's infringement of the '022 Patent, Microsoft Entra meets all the limitations of exemplary Claim 1 of the '022 Patent.

111. Microsoft Entra software provides "a specific method for improving the security and control of a computing system internally and with outside computing, storage and network systems by a practical application of the computing system automatically and dynamically without human intervention determining whether a first computing system element is authorized to perform an action it attempts involving at least a second computing system element."  As discussed above with respect to Count I, Microsoft Entra provides security and control over computer systems and resources by combining functionality to identify and authenticate users or resources seeking access to a resource to perform an activity.  The activity can involve stored data, internal resources, or external computer resources.  The authorization determination is made automatically without human intervention by applying attributes to policies  The determination is dynamic in that it is based on the current state of the attributes and the session.

112. Microsoft's Entra Permissions Management is a cloud infrastructure entitled management (CIEM).  As described above, Microsoft Entra Permissions Management realizes the substantial advantage of bringing signals together to make decisions and enforce organizational policies.  It provides comprehensive visibility into permissions assigned to all identities, (including for example, users and workloads), actions, and resources across cloud infrastructures.

113.    Microsoft's Entra Permissions detects, right-sizes, and monitors unused and excessive permissions and enables Zero Trust security through least privilege access in Microsoft Azure, Amazon Web Services (AWS), and Google Cloud Platform (GCP).

114.    Microsoft Entra's Conditional Access functions take signals from various sources into account when enforcing policy decisions and enforce organizational policies.  Example signals, reproduced below, show that the signals from various sources are taken into account when enforcing policy decisions.



Ex. 24 at 1-2, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).

115.    Microsoft Entra "request[s], by the first computing system element, an action that involves the second computing system element, wherein the first computing system element is selected from a first group consisting of a user, an individual, a machine, a device, a server, a process, a team, a group, a role, an application, a function, an operation, a service, and a network."  Microsoft Entra requires users to perform a multifactor authentication to gain access

to an application or service that the user is requesting.  For example, if a user requests access to Microsoft 365, then the user must perform multifactor authentication to gain access.  Ex. 24, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).  As discussed above with respect to Count I, the entity making the action request can be, for example, users, machines, devices, processes.  After authentication, the user or resource can, through Microsoft Entra, request to perform an action on another element.

116.    In Microsoft Entra, "the second computing system element is selected from a second group consisting of a user, an individual, a role, an organization, a resource, an object, a service, a machine, a device, a server, a processor, an application, a process, a function, an operation, a storage device, a database, information, data, a file, a document, a webpage, a network, a team, a group, a task, and a rule."  As discussed above with respect to Count I, the second element that is the target of the action request can be a variety of elements.  For example, Microsoft Entra makes authorization determines as to if a first system element can perform an action on specific users (for example, an administrator may be authorized to change the permissions for a user), groups, resources, and files.

117.    Microsoft Entra's Conditional Access takes many signals from various sources into account when making access decisions.  Ex. 24, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).  For example, these signals can include:

- User or group membership: policies can be targeted to specific users and groups giving administrators line-grained control over access;

- IP Location information: Organizations can create trusted IP address ranges that can be used when making policy decisions and administrators can specify entire countries or regions IP ranges for which traffic will be allowed or blocked;

- Device: Users with devices of specific platforms or marked with a specific state can be used when enforcing Conditional Access policies and filters can be used to target policies specific to devices, for example, privileged access workstations;

- Application: Users attempting to access specific applications can trigger different Conditional Access policies;

- Real-time and calculated risk detection: signals integration with Microsoft Entra ID Protection lets Conditional Access policies identify and remediate risky users and sign-in behavior; and

- Microsoft Defender for Cloud Apps: permits user application access and sessions to be monitored and controlled in real-time which increases visibility and control over access to and activities done within your cloud environment.

Ex. 24, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).

118.   Microsoft Entra "receive[s], by a computing system process, the request to perform an action by the first computing system element that involves at least the second computing system element."  As discussed in the examples above, Microsoft Entra receives requests to perform actions.  For example, a Microsoft Entra user can request access to an application, a file, or to modify the permissions of another user.  Ex. 32, Building a Conditional Access Policy (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-policies).

36

119.    Microsoft Entra "identif[ies], by a computing system process, the action requested by the first computing system element involving at least the second computing system element." As discussed in the above examples, Microsoft Entra receives and processes requests to perform actions.  The Conditional Access takes signals from various sources and considers the signals when enforcing policy decisions.  For example, Conditional Access identifies signals and brings them together to make decisions and enforce organizational policies.



Ex. 24 at 1, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).

120.    Microsoft Entra "identif[ies], by a computing system process, at least one rule for the identified requested action that uses at least the value of at least one attribute of at least the second computing system element to automatically and dynamically without human intervention determine if the first computing system element is authorized to perform the requested action." As discussed in the examples above, Microsoft Entra applies attributes, including for the target of the action request, to the applicable policies to determine if the action is authorized.  These determinations are made automatically and without human intervention, by applying the relevant attributes to the relevant policies.  The determinations are dynamic because Microsoft Entra makes determinations based on updated attribute data, without a need to predefine the specific objects a user is authorized to access.

121.    Many organizations have common access concerns that Microsoft Entra Conditional Access policies aim to resolve, such as:

- Requiring multifactor authentication for users with administrative roles;

- Requiring multifactor authentication for Azure management tasks;

- Blocking sign-ins for users attempting to user legacy authentication protocols;

- Requiring trusted locations for security information registration;

- Blocking or granting access from specific locations;

- Blocking risky sign-in behaviors; and

- Requiring organization-managed devices for specific applications.

Ex. 24, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).

122.    Microsoft Entra running on a processor "analyz[es] the identified at least one rule for the identified requested action automatically and dynamically without human intervention, by a computing system processor, to identify the at least one attribute of at least the second computing system element used by the identified at least one rule to determine if the first computing system element is authorized to perform the requested action and dynamically and automatically determines in real time if the first computing system element is authorized to perform the requested action according to the identified at least one rule, by a computing system processor, without human intervention, analyzing the identified at least one rule for the identified requested action with at least the dynamically collected current value of the at least one attribute of the at least the second computing system element." As discussed above, Microsoft Entra applies the applicable attributes to the applicable policies to make a real-time, dynamic, and automatic determination as to if the action is authorized.

123.    Microsoft Entra "completes, by the computing system, the requested action if a computing system processor automatically and dynamically without human intervention determines, by analyzing at least the one rule, that the first computing system element is authorized to perform the requested action." As discussed above, the end result of the authorization analysis is that if the requested action is authorized (based on the application of the relevant attributes to the policy rules), then then command is given for action to be performed.

124.    Microsoft's direct infringement of the '022 Patent has injured and continues to injure Snowflake in an amount to be proven at trial, but not less than a reasonable royalty.

125.    Microsoft has had knowledge of Snowflake's patents since at least as early as 2019 and has had specific knowledge of its infringement of the '022 Patent since at least the filing of this Complaint, if not earlier.  Microsoft's actions are willful, blatant, and in egregious disregard for Snowflake's patent rights.

126.    Microsoft's infringement has caused and is continuing to cause damage and irreparable injury to Snowflake, and Snowflake will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

127.    Microsoft acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '022 Patent, justifying an award to Microsoft of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

128.    Snowflake is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Microsoft's direct infringement of the '022 Patent.

### COUNT IV - INDIRECT INFRINGEMENT OF THE '022 PATENT

129.    Snowflake repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

130.    As set forth above, Microsoft has had knowledge of Snowflake's patents since at least as early as 2019 and has had specific knowledge of its infringement of the '022 Patent since at least the date of this Complaint, if not earlier.

131.    As set forth with respect to Count III, at least Microsoft Entra software directly infringes the '022 Patent.  In addition to directly infringing the '022 Patent, Microsoft has actively, knowingly, and intentionally induced and continues to induce direct infringement of the '022 Patent under 35 U.S.C. § 271(b) by instructing and encouraging its customers to use or install Microsoft Entra software in an infringing manner.  For example, all of the infringing functionalities discussed above are supported and encouraged by Microsoft through the resources on its learn.microsoft.com portal cited above.

132.    Microsoft instructs and encourages its customers on how to use each of these core features of Microsoft Entra software, including through direct communication, trainings, reference materials, user guides, promotional materials, support contracts, sales calls, release notes, webinars, guidelines, videos, manuals, and white papers, all of which are intended to enable and encourage the infringing use of Microsoft Entra software.

133.    Microsoft's websites promote Microsoft Entra software and describe the benefits of these products, and detail various packages available to customers.  *See, e.g.,* Exs. 18, 20-21.

134.    Microsoft is also liable for contributory infringement of the '022 Patent pursuant to 35 U.S.C. § 271(c) by knowing or being willfully blind to the fact that it is contributing to infringement of the '022 Patent by offering to sell and selling in the United States Microsoft Entra software.  Microsoft Entra software is not a staple article or commodity of commerce suitable for substantial non-infringing use.  This is because the core functionality of Microsoft

Entra described above, infringes the '022 Patent.  Thus, there is no substantial non-infringing use for Microsoft Entra.

135.    Microsoft's indirect infringement of the '022 Patent has injured and continues to injure Snowflake in an amount to be proven at trial, but not less than a reasonable royalty. Snowflake will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by the Court.

136.    Pursuant to 35 U.S.C. §§ 283, 284, and 285, Snowflake is entitled to injunctive relief, damages, and attorney's fees and costs.

## COUNT V - DIRECT INFRINGEMENT OF THE '355 PATENT

137.    Snowflake repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

138.    Microsoft has infringed and continues to directly infringe at least exemplary Claim 1 of the '355 Patent in violation of 35 U.S.C. § 271(a) by making, using, importing, selling, and offering for sale in the United States at least Microsoft Entra without the permission, consent, authorization, or license of Snowflake.

139.    Microsoft's infringement is based upon literal infringement, infringement under the doctrine of equivalents, or both.

140.    Microsoft directly infringes the claimed methods because it hosts and operates Microsoft Entra.  Customers do not deploy, install, or run Microsoft Entra on their own servers. Instead, customers are provided with "tenants," which are identity directories inside Microsoft's cloud.

141.    By way of example of Microsoft's infringement of the '355 Patent, Microsoft Entra meets all the limitations of exemplary Claim 1 of the '355 Patent.

41

142.    Microsoft Entra utilizes "a method to manage authority and access within a computing environment having a plurality of elements with attributes and at least one activity that a first computing environment element can perform that includes a second computing environment element, and having at least one rule specifying how to use at least one attribute type the second computing environment to automatically and dynamically without human intervention determine whether the activity is allowed to be performed by the first computing environment element."  As discussed above, Microsoft Entra manages authorization and access for elements in a computing environment.  The elements are assigned attributes that are applied to policies to determine if the first element seeking to perform an action on a second element is permitted to do so.  Microsoft Entra applies the applicable attributes to the applicable policies to make a real-time, dynamic, and automatic determination as to if the action is authorized.  Example signals, reproduced below, show that the attributes from various sources are taken into account when enforcing policy decisions.



Ex. 24 at 1-2, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).

143.    As discussed above, Microsoft Entra receives "request[s], by the first computing system element, an activity that includes the second computing environment element from the plurality of computing environment elements, wherein the first computing environment element is selected from a first group consisting of a user, a process, an application, a function, a device, a machine, a team, and a group."  Ex. 24, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).  Microsoft Entra determines authorizations for users, process, and applications to perform various actions.

144.    In Microsoft Entra, "the second computing environment element is selected from a second group consisting of a user, a file, a page, a web site, a document, data, a function, a process, an application, a device, a machine, a team, a group, a resource, a rule, and a task."  As discussed above, Microsoft Entra applies attributes to policies to determine if a requesting element is authorized to access or perform actions on a variety of resources, such as files, documents, and data, or actions on another user's account.  Microsoft Entra takes signals from various sources into account when making access decisions.  Ex. 24 at 1-2, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).

145.    Microsoft Entra "receive[s], by a processor within the computing environment, the request by the first computing environment element to perform an activity that includes the second computing environment element."  As discussed above, Microsoft's processor running Microsoft Entra receives requests to perform actions on other elements.  For example, if a user requests access to an application or service, such as Microsoft 365, then the access request is sent

to the processor to apply the appropriate policy.  Ex. 24, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).

146.    Microsoft Entra "identif[ies], by a processor within the computing environment, the activity requested by the first computing environment element" and "identif[ies], by a processor within the computing environment, the at least one rule specifying how to use at least one attribute type of at least the second computing environment element to automatically and dynamically without human intervention determine whether the activity requested by the first computing environment element is allowed to be performed by the first computing environment element."   As discussed above, the Microsoft processor running Microsoft Entra identifies the requested action, identifies one or more policies that apply to the requested action, and then applies the relevant attributes of the requesting element and the requested element to make a real-time, dynamic, and automatic determination as to if the action is authorized.



Ex. 24 at 1, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).

147.    Microsoft Entra "analyz[es], by a processor within the computing environment, the identified at least one rule specifying how to use at least one attribute type of at least the second computing environment element to identify the at least one attribute type of at least the second computing environment element that is to be evaluated by the identified at least one

rule."  As discussed above, Microsoft Entra then applies the attributes to the rule, including attributes for the requested object, to make the authorization determination.

148.    Microsoft Entra "dynamically collects, by a processor within the computing environment, the current value of the identified at least one attribute type of at least the second computing environment element that is to be evaluated by the identified at least one rule."  As discussed above, Microsoft Entra makes authorization determinations based on real-time collected data.  For example, the software dynamically collects user session details, like network location and device identity necessary for policy evaluation.  Ex. 32, Building a Conditional Access Policy (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-policies).

149.    Microsoft Entra "determine[es] in real time, by a processor within the computing environment automatically and dynamically without human intervention analyzing the identified at least one rule, that specifies how to use at least one attribute type of at least the second computing environment element, using the collected current value of the identified at least one attribute type of at least the second computing environment element, if the requested activity is allowed to be performed by the first computing environment element."  As shown in the exhibit below and discussed above, Microsoft Entra makes real-time, dynamic authorization determinations based on the applicable attributes.  For example, the prompt may include multifactor authentication or device compliance.  In this example, one prompt is related to the user, and the other prompt is related to the device itself.  Both may need to have the appropriate permissions for the requested activity to be performed by the user in addition to the target of the activity having appropriate attributes.  Ex. 32, Building a Conditional Access Policy (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-

policies); Ex. 24, What is Conditional Access? (https://learn.microsoft.com/en-us/entra/identity/conditional-access/overview).

150.    Microsoft Entra "generat[es], by a processor, the first element authority to access the second element if the requested activity is allowed to be performed by the first computing environment element."  Microsoft Entra, as discussed above, provides authorization to access elements if the applicable policies are satisfied.  Ex. 32 (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-policies).

151.    Microsoft Entra "generat[es], by a processor, the first element access to the second element if the requested activity is allowed to be performed by the first computing environment element."  As shown in the exhibit below, access to the target is only granted if the requested activity is allowed.



Ex. 33 at 2, Conditional Access: Grant (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-grant) (showing requirements for access to be granted).

152.    Microsoft Entra "generat[es], by a processor, the first element authority to perform the requested activity if the requested activity is allowed to be performed by the first computing environment element."  As discussed above, Microsoft Entra sends the result of its authorization determination, which, if the policy is satisfied, allows the first element authority to proceed with the requested action.

47



Ex. 34 at 1, Conditional Access: Session (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-session).

153.    Organizations can use this control to require Microsoft Entra to pass device information to selected cloud apps.  The device information allows cloud apps to know if a connection is from a compliant or domain-joined device and update the session experience. When selected, the cloud app uses the device information to provide users with a limited or full experience.  Ex. 34, Conditional Access: Session (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-session).

154.    Microsoft Entra "automatically implements, by a processor within the computing environment, the activity requested by the first computing environment element if the at least one rule, that specifies how to use at least one attribute type of at least the second computing

48

environment element, analyzing at least the collected current value of the identified at least one attribute type of at least the second computing environment element determined that the activity is allowed to be performed by the first computing environment element." As discussed above, Microsoft Entra automatically implements the requested action if the policies are met. Ex. 32, Building a Conditional Access Policy (https://learn.microsoft.com/en-us/entra/identity/conditional-access/concept-conditional-access-policies).

155. Microsoft's direct infringement of the '355 Patent has injured and continues to injure Snowflake in an amount to be proven at trial, but not less than a reasonable royalty.

156. Microsoft has had knowledge of Snowflake's patents since at least as early as 2019 and has had specific knowledge of its infringement of the '355 Patent since at least the filing of this Complaint, if not earlier. Microsoft's actions are willful, blatant, and in egregious disregard for Snowflake's patent rights.

157. Microsoft's infringement has caused and is continuing to cause damage and irreparable injury to Snowflake, and Snowflake will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

158. Microsoft acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '355 Patent, justifying an award to Microsoft of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

159. Snowflake is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Microsoft's direct infringement of the '355 Patent.

**COUNT VI - INDIRECT INFRINGEMENT OF THE '355 PATENT**

160.    Snowflake repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

161.    As set forth above, Microsoft has had knowledge of Snowflake's patents since at least as early as 2019 and has had specific knowledge of its infringement of the '355 Patent since at least the date of this Complaint, if not earlier.

162.    As set forth with respect to Count V, at least Microsoft Entra software directly infringes the '355 Patent.  In addition to directly infringing the '355 Patent, Microsoft has actively, knowingly, and intentionally induced and continues to induce direct infringement of the '355 Patent under 35 U.S.C. § 271(b) by instructing and encouraging its customers to use or install Microsoft Entra software in an infringing manner.  For example, all of the infringing functionalities discussed above are supported and encouraged by Microsoft through the resources on its learn.microsoft.com portal cited above.

163.    Microsoft instructs and encourages its customers on how to use each of these core features of Microsoft Entra software, including through direct communication, trainings, reference materials, user guides, promotional materials, support contracts, sales calls, release notes, webinars, guidelines, videos, manuals, and white papers, all of which are intended to enable and encourage the infringing use of Microsoft Entra software.

164.    Microsoft's websites promote Microsoft Entra software and describe the benefits of these products, and detail various packages available to customers.  *See, e.g.,* Exs. 18, 20-21.

165.    Microsoft is also liable for contributory infringement of the '355 Patent pursuant to 35 U.S.C. § 271(c) by knowing or being willfully blind to the fact that it is contributing to infringement of the '355 Patent by offering to sell and selling in the United States Microsoft

Entra software.  Microsoft Entra software is not a staple article or commodity of commerce suitable for substantial non-infringing use.  This is because the core functionality of Microsoft Entra described above infringes the '355 Patent.  Thus, there is no substantial non-infringing use for Microsoft Entra.

166.   Microsoft's indirect infringement of the '355 Patent has injured and continues to injure Snowflake in an amount to be proven at trial, but not less than a reasonable royalty. Snowflake will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by the Court.

167.   Pursuant to 35 U.S.C. §§ 283, 284, and 285, Snowflake is entitled to injunctive relief, damages, and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Snowflake prays for judgment and relief as follows:

A.   An entry of judgment holding that Microsoft has infringed and is infringing the Asserted Patents, has infringed and is infringing the Asserted Patents jointly with its customers, has induced and is inducing infringement of the Asserted Patents, and has contributorily infringed and continues to contribute to infringement of the Asserted Patents;

B.   A preliminary and permanent injunction against Microsoft and its officers, employees, agents, servants, attorneys, instrumentalities, and those in privity with them, from infringing, directly or indirectly, the Asserted Patents and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C.   An award to Snowflake of damages to be proven at trial to compensate Snowflake for Microsoft's infringement of the Asserted Patents that will account for

infringement up to trial based on the relevant information and financials produced, where said damages will be no less than a reasonable royalty;

D.     A determination that Microsoft's infringement has been willful, wanton, and deliberate.

E.     An award to Snowflake of increased damages under 35 U.S.C. § 284 based on, *inter alia,* Microsoft's willful infringement of the Asserted Patents;

F.     A finding that this case is "exceptional" and an award to Snowflake of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

G.     An accounting of all infringing sales and revenues from the first date of infringement of the Asserted Patents;

H.     Post judgment interest and prejudgment interest; and

I.     Such further and other relief as the Court may deem proper and just.


Respectfully submitted

Dated: April 14, 2026             By: */s/ Elizabeth L. DeRieux*
                                  Elizabeth L. DeRieux
                                  State Bar No. 05770585
                                  Capshaw DeRieux LLP
                                  114 E. Commerce Ave.
                                  Gladewater, TX 75647
                                  Telephone: 903-845-5770
                                  ederieux@capshawlaw.com

                                  Paul J. Andre (*pro hac vice to be filed*)
                                  Lisa Kobialka (*pro hac vice to be filed*)
                                  HERBERT SMITH FREEHILLS
                                  KRAMER (US) LLP
                                  333 Twin Dolphin Drive, Suite 700
                                  Redwood Shores, CA 94065
                                  Telephone: (650) 752-1700
                                  paul.andre@hsfkramer.com
                                  lisa.kobialka@hsfkramer.com


52

Aaron M. Frankel
HERBERT SMITH FREEHILLS
KRAMER (US) LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
aaron.frankel@hsfkramer.com

*Attorneys for Plaintiff*
Snowflake ITM, Inc.

53